FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 20, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRACY LORRAINE J.,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | NO: 2:22-CV-168-RMP<br><br>ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER |

BEFORE THE COURT, without oral argument, are briefs from Plaintiff Tracy Lorraine J.[1], ECF No. 13, and Defendant the Commissioner of Social Security (the "Commissioner"), ECF No. 14. Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) of the Commissioner's denial of her claim for Social Security Income ("SSI") and Child Disability Benefits ("CDB") under Titles XVI and II, respectively, of the Social Security Act (the "Act"). *See* ECF No. 14 at 1–2.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and middle and last initials.

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 1

Having considered the parties' briefs, the administrative record, and the applicable law, the Court is fully informed. For the reasons set forth below, the Court denies Plaintiff's request for judgment and remand in her Opening Brief and directs entry of judgment in favor of the Commissioner.

## BACKGROUND

*General Context*

Plaintiff filed protective applications for SSI and CDB on October 10, 2018, claiming disability onset on January 1, 1998. Administrative Record ("AR")[2] 417, 419, 433, 476. Plaintiff was 12 years old on the alleged disability onset date and asserted that she was entitled to CDB because she was disabled before she was 22 years old and unable to work due to colon cancer (stage II), learning disabilities, dyslexia, anxiety, depression, epilepsy, bad knees, asthma, and polycystic ovarian syndrome. *See* AR 454. Plaintiff's application was denied initially and upon reconsideration, and Plaintiff requested a hearing. *See* AR 196, 200, 211, 219.

Administrative Law Judge ("ALJ") Lori Freund held a remote hearing on Plaintiff's applications from Spokane, Washington, on June 14, 2021. AR 71. Plaintiff appeared by telephone, represented by her attorney, Meghan Lynch. AR 71. The ALJ heard testimony from Plaintiff, two impartial medical experts, and an

---

[2] The Administrative Record is filed at ECF No. 11.

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 2

1  impartial vocational expert.  AR 71.  Plaintiff amended her alleged onset date to

2  November 2, 2006.  *See* AR 15.  The ALJ issued a written decision on July 28, 2021,

3  finding that Plaintiff was not disabled under the applicable sections of the Act and

4  thus not entitled to benefits.  AR 15–29.  The Appeals Council denied review.  AR

5  1–6.

6      ***ALJ's Decision***

7      Applying the five-step evaluation process, ALJ Freund found:

8      **Step one:**  Plaintiff was under age 22 on November 2, 2006, the amended

9  alleged onset date.  AR 18.  Plaintiff also has not engaged in substantial gainful

10  activity since the November 2, 2006 alleged onset date.  AR 18.

11      **Step two:** For the CDB claim, during the relevant period from the alleged

12  onset date of November 2, 2006, to the attainment of age 22 in August 2007,

13  Plaintiff had the following medically determinable impairments: mild degenerative

14  joint disease of the bilateral knees; obesity; and headache.  AR 18 (citing 20 C.F.R.

15  §§ 404.1521 *et seq.* and 416.921 *et seq.*).  The ALJ further found that Plaintiff did

16  not have an impairment or combination of impairments that significantly limited (or

17  was expected to significantly limit) the ability to perform basic work-related

18  activities for 12 consecutive months and concluded that claimant did not have a

19  severe impairment or combination of impairments that limited her ability to perform

20  basic work activities.  AR 18 (citing 20 C.F.R. §§ 404.1521 *et seq.* and 416.921 *et*

21

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING JUDGMENT
IN FAVOR OF THE COMMISSIONER ~ 3

*seq.*; SSR 16-3p).  With respect to Plaintiff's SSI claim, the ALJ found that, since the application date of October 10, 2018, Plaintiff has had the following severe impairments: degenerative joint disease of the knees; obesity; asthma; seizure disorder; colon cancer, stage II, no recurrent disease; headaches; major depressive disorder with panic features; and post-traumatic stress disorder.  AR 20.  The ALJ further found that Plaintiff has nonsevere impairments, including: acute venous thrombosis (non-durational not on any anticoagulant); polycystic ovarian disease; GERD; hernia; mild obstructive sleep apnea; and learning disorder.  AR 20.  However, the ALJ memorialized that she considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the Plaintiff's residual functional capacity ("RFC").  AR 20.

**Step three:** The ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  AR 20.  With respect to Plaintiff's physical impairments, the ALJ considered listings 1.18 (abnormality of a major joint(s) in any extremity), 11.02 (epilepsy), 3.02 (chronic respiratory disorders), and 13.18 (cancer of the large intestine).  AR 20.  The ALJ also memorialized that she considered whether the effects of obesity experienced by Plaintiff meet or medically equal a listing, and whether the combined effects of

obesity and other impairments meet or medically equal a listing. AR 20. In assessing the severity of Plaintiff's mental impairments, the ALJ considered whether the "paragraph B" criteria were satisfied for purposes of meeting or medically equaling listings 12.04 (depressive, bipolar, and related disorders), 12.06 (intellectual disorder), and 12.15 (trauma- and stressor-related disorders). AR 21. The ALJ found that Plaintiff is mildly limited in understanding, remembering or applying information and moderately limited in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. AR 21. The ALJ also found that the evidence in Plaintiff's record does not establish the presence of "paragraph C" criteria. AR 21.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff can perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk a total of two hours in an eight-hour workday; sit at least six hours in an eight-hour workday; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, balance, crouch and crawl; occasionally reach overhead with the right upper extremity; avoid all exposure to unprotected heights, operational control of moving machinery, and working around hazards; avoid concentrated exposure to pulmonary irritants, extreme cold, humidity and excessive vibration; perform simple and repetitive tasks with only occasional changes in the work

setting; have superficial interaction with the general public; have occasional interaction with coworkers with no tandem tasks; and would need access to a restroom at the jobsite." AR 22.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 23.

**Step four:** The ALJ found that Plaintiff has no past relevant work. AR 28 (citing 20 C.F.R. §§ 404.1565, 416.965).

**Step five:** The ALJ found that Plaintiff has at least a high school education and was 33 years old, which is defined as a younger individual (age 18-49), on Title XVI application date. AR 28 (citing 20 C.F.R. §§ 404.1563, 416.963). The ALJ found that transferability of job skills is not an issue because Plaintiff does not have past relevant work. AR 24 (citing 20 C.F.R. §§ 404.1568, 416.968). The ALJ found that given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in the national economy that Plaintiff would be able to perform. AR 28. Specifically, the ALJ recounted that the vocational expert identified the following representative occupations that Plaintiff would be able to perform with the RFC: egg

sorter (light, unskilled with approximately 62,010 jobs in the national economy); garment sorter (light, unskilled with approximately 125,000 jobs in the national economy); and basket filler (light, unskilled with approximately 100,000 in the national economy). AR 28. The ALJ concluded that Plaintiff had not been under a disability, as defined by the Act, from November 2, 2006, through July 28, 2021, the date of the ALJ's decision. AR 29.

Through counsel Kevin Kerr, Plaintiff sought review of the ALJ's unfavorable decision in this Court. ECF No. 1.

# LEGAL STANDARD

## *Standard of Review*

Congress has provided a limited scope of judicial review of the Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" also will be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### *Definition of Disability*

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to

be under a disability only if the impairments are of such severity that the claimant is not only unable to do their previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### *Sequential Evaluation Process*

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R §§ 416.920, 404.1520. Step one determines if they are engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§

416.920(a)(4)(iii), 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that they have performed in the past. If the claimant can perform their previous work, the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering their residual functional capacity and age, education, and past work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents them from engaging in their previous occupation. *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant

can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

The parties' motions raise the following issue regarding the ALJ's decision:

1. Did the ALJ erroneously consider Plaintiff's headaches by failing to determine whether they meet or equal listing 11.02 and in omitting relevant limitations from Plaintiff's RFC?

***Headaches***

Plaintiff argues that the ALJ did not follow the policy set forth in Social Security Ruling ("SSR") 19-4p addressing primary headache disorders such as migraines. ECF No. 13 at 4. Plaintiff asserts that SSR 19-4p indicates that while headache disorders do not have their own listing, the most closely analogous listed impairment is epilepsy under listing 11.02. *Id.* at 4. Plaintiff asserts that in considering listing 11.02, an ALJ must make findings as to the nature and extent of a claimant's seizure events. *Id.* at 4–5 (citing *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001)). Plaintiff adds that "[b]y analogy, the ALJ must make findings as to the nature and extent of headache events in order to determine equivalence to Listing 11.02B, unless the headaches are largely a result of noncompliance." *Id.* at 5 (citing nothing). Plaintiff continues that the ALJ further must consider the symptoms of a claimant's headache disorder, such as photophobia, in formulating the RFC. *Id.*

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 11

1  Plaintiff asserts that the ALJ did not specify whether she considered listing 11.02 in

2  the context of Plaintiff's headaches. *Id.* at 10–11.

3  Plaintiff contrasts her testimony that she had migraine headache events three

4  to four times per week in the month prior to the hearing with the ALJ's recitation,

5  simply, that "[t]he claimant stated she has frequent migraines [sic] headaches'

6  approximately 3-4 times a week with each migraine lasting 6-8 hours." *Id.*

7  (emphasis added); AR 23, 101.  Plaintiff asserts that the ALJ did not cite to any

8  evidence of noncompliance with medication and instead cited to a record indicating

9  that Plaintiff reported having fifteen headache events over three months, which

10  Plaintiff maintains is a listing-level frequency. *Id.* at 6–7 (citing AR 2128).  Plaintiff

11  adds that the ALJ "rejected Plaintiff's testimony as to the frequency of her headache

12  events, but offered no discussion of the duration." *Id.* at 7.  Plaintiff asserts that

13  three of the occasions that the ALJ cited to show that Plaintiff denied headaches at

14  medical appointments occurred prior to Plaintiff's protective filing date, October 10,

15  2018. *Id.* (citing AR 621, 1908, 1915).  Plaintiff asserts that the remaining occasions

16  that the ALJ cited to show that Plaintiff did not report headaches were from medical

17  visits in 2018 and early 2019 for unrelated medical conditions. *Id.* at 7–8 (citing AR

18  864, 948, 1576, 1756, 1813).  Plaintiff submits that a person experiencing migraine

19  headaches thirty to forty hours per month "would almost certainly miss two or more

20  days per month from work, even if one assumes that roughly half of the migraines

21

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING JUDGMENT
IN FAVOR OF THE COMMISSIONER ~ 12

occurred on weekends," which the vocational expert testified would be "problematic" for maintain competitive employment. *Id.* at 8–9 (citing AR 110).

The Commissioner responds that, "[d]espite being questioned by her attorney, Plaintiff did not attribute any limitations to her headaches and continued to claim she was disabled due to seizures instead." ECF No. 14 at 2 (citing AR 2360–61). As such, the Commissioner argues, Plaintiff's headache testimony was not material to her claim. *Id.* Moreover, the Commissioner argues that the ALJ "reasonably found any allegation of disabling headaches was unfounded for many reasons[,]": including that Plaintiff did not receive treatment for headaches until nearly a year after alleged onset of disability date and reported significant relief once she took medication to prevent headaches; Plaintiff denied having headaches at approximately eight appointments; even when complaining of headaches, Plaintiff presented with unremarkable examination findings and in no acute distress; and Plaintiff demonstrated an ability to care for a young son, both her ailing parents, and her sister's children, showing that her symptoms were not debilitating. *Id.* at 2–3 (citing AR 19, 23, 25, 621, 626–27, 650–51, 864, 1370, 1576, 1756, 1813, 1908, 1915, 2142, 2263, 2273, 2278, and 2297). Furthermore, the ALJ relied on medical opinions that considered the effects of Plaintiff's headaches and found that the impairment did not equal listing 11.02 and that she was limited to light work that limited her exposure to hazards and many environmental irritants. *Id.* at 3 (citing

1  AR 22).  The Commissioner argues that it is not a reviewing court's role to replace

2  the ALJ's findings with Plaintiff's view of the record.  *Id.* (citing *Kaufman v.*

3  *Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022)).

4      Plaintiff replies that she concedes that a lack of evidence for headaches prior

5  to October 2007 defeats her claim for CDB based on this impairment.  ECF No. 15

6  at 1.  Plaintiff argues that, as a result, whether Plaintiff had headaches prior to

7  October 2018 is not probative of whether her headaches were debilitating during the

8  relevant period for her SSI claim.  *Id.* at 2.

9      The ALJ found that headaches are a severe impairment for Plaintiff at step

10  two.  AR 20.  At step three, the ALJ recorded that she considered listing 11.02 for

11  epilepsy, as well as other listings pertinent to Plaintiff's physical impairments.  AR

12  20.  The ALJ found that the "record does not establish the medical signs, symptoms,

13  laboratory findings or degree of functional limitation required to meet or equal the

14  criteria of any listed impairment and no acceptable medical source designated to

15  make equivalency findings has concluded that the claimant's impairment(s)

16  medically equal a listed impairment." AR 20.  The ALJ did not mention Plaintiff's

17  headaches at step three.  AR 20.  In formulating Plaintiff's RFC, the ALJ discussed

18  Plaintiff's testimony and the medical record regarding headaches.  AR 23.  The ALJ

19  found Plaintiff capable of light work with a combination of postural and

20  environmental limitations.  AR 22.

21

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING JUDGMENT
IN FAVOR OF THE COMMISSIONER ~ 14

Headaches that "occur independently and are not caused by another medical condition," termed "primary headaches," are not a listed impairment. SSR 19-4p, 2019 SSR LEXIS 6, at *5, *16, 2019 WL 4169635, at *3, *7 (Aug. 26, 2019). Rather, the agency has identified listing 11.02, for epilepsy, as the most closely analogous listed impairment for primary headache disorder and provides that, "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures)." SSR 19-4p, 2019 SSR LEXIS 6, at *16. Ruling 19-4 explains:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an [accepted medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).
>
> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same

>factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

SSR 19-4p, 2019 SSR LEXIS 6, at *16–18.

Plaintiff maintains that the ALJ herself cited to a record demonstrating listing-level frequency when she cited to a May 2020 treatment note that Plaintiff reported having "15 or so headaches in the past 3 months." AR 2128. However, the next sentences of that treatment note set forth: "Her headaches are responsive to sumatriptan. She has not had any side effects from topiramate. Because she has morbid obesity, we will increase the dosage to 25 mg p.o. twice daily in the hopes that we can reduce her headache frequency even further and help her lose some weight." AR 2128. The same record later summarizes, "Her headaches are responsive to sumatriptan. She has not had any side effects from topiramate. Because she has morbid obesity, we will increase the dosage to 25 mg p.o. twice daily in the hopes that we can reduce her headache frequency even further and help her lose some weight." AR 2133. This record does not support equivalency under either Paragraph B or D, as set forth in SSR 19-4p. Specifically, regarding Paragraph B, the record indicates that Plaintiff did not report any side effects from the medication, and there is no evidence in the record of any limitations that Plaintiff

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 16

experienced due to her reported headaches. See AR 2128–33. Regarding Paragraph D, Plaintiff did not provide any evidence of equivalency by showing that a primary headache disorder resulted in a marked limitation in her physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. SSR 19-4p, 2019 SSR LEXIS 6, at *16–18. Plaintiff had the burden of proof to show that her headaches satisfied SSR 19-4p and listing 11.02. See Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). Plaintiff has not shown that she presented sufficient evidence of equivalency that the ALJ disregarded at step three.

Plaintiff also faults the ALJ for not including limitations based on the headaches in formulating the RFC. Plaintiff asserts that the ALJ should have addressed the six- to eight-hour duration of Plaintiff's headaches that Plaintiff reported at her May 2020 medical appointment, which, Plaintiff asserts would amount to "30 to 40 hours per month of headache time," accepting Plaintiff's report to the same provider that she had experienced fifteen headaches over the prior three months. ECF No. 15 at 7. However, Plaintiff does not challenge whether the ALJ relied on substantial evidence in formulating Plaintiff's RFC; rather she proposes an alternative assessment of the record. As the Commissioner discusses, the ALJ provided several reasons, supported by substantial evidence in the record, for discounting Plaintiff's headache allegations. See ECF No. 14 at 2–3, 7–14. Plaintiff

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 17

does not cite any authority for the proposition that an excerpt of one medical record must be given controlling weight, and the Court's role is not to reweigh the evidence. *See Kaufman*, 32 F.4th at 851; *Ahearn v. Saul,* 988 F.3d 1111, 1115 (9th Cir. 2021) (noting that reviewing courts "may not reweigh the evidence or substitute our judgment for that of the ALJ"). Consequently, the Court finds no error in the ALJ's treatment of Plaintiff's headaches.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Opening Brief, **ECF No. 13**, is **DENIED**.

2. Defendant the Commissioner's Brief, **ECF No. 14**, is **GRANTED**.

4. Judgment shall be entered for Defendant.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close the file** in this case.

**DATED** June 20, 2023.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
Senior United States District Judge

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 18